Good morning all. Our first case this morning is Evex Capital v. National Futures Association. Mr. Bacon. Good morning. As you're aware, I represent appellants, plaintiffs, Efex Capital, and John Dottami. We brought this appeal because we believe district court erred in finding that Efex failed to exhaust remedies. We don't believe there are any remedies for Efex to exhaust. Apparently, respondents feel the same way because a large portion of their brief is devoted to alternative grounds for the court to reverse. Now, with that said, why do I think there are no feasible avenues to exhaust? Well, there's a whole line of cases about exhaustion of remedies. And they have to be fairly discernible, and a person of ordinary firmness has to deem there an available remedy. One of the issues respondents raise is why did it take so long for us to bring this case? Because we actually hired, and this is in the record below, we hired regulatory counsel, we had regulatory counsel, because my client was a sophisticated trading firm. And the regulatory counsel told us we didn't have any remedies before the CFTC. But not only taking that at its word, we did lots of research, and we looked for remedies, and we couldn't find any. So we brought this case. And it was imminent that we get relief because the publications that the NFA made post their disciplinary hearing of FXCM, these publications absolutely destroyed my client's reputation and has now put them out of business. At least that business they're in is a market made for a liquidity provider. Nobody wanted to trade with them. NFA argues that CFTC made comparable statements about EFEX to NFA. But they didn't. There are significant differences. And I'm not going to go to all of them, two that jump right out at you. NFA says EFEX engaged in abusive trading practices. And then it states last look, hold timer, and payment for order flow. NFA argues that CFTC said the same thing. They didn't. They said NFA employed last look and hold timer. It doesn't say they're abusive. Because almost all the traders used those things. Why was EFEX targeted for that? That's commonplace in all the high frequency traders. They all use last look and hold timer. And there's litigation all over the place about it. And these cases have been getting dismissed. The other main difference is that NFA stated that EFEX was owned and controlled by FXCM. So it made the appearance that EFEX was a shill for FXCM. It wasn't. I represented EFEX from all the way from the beginning. And EFEX was its own independent entity. It was independently capitalized. And it was at odds with FXCM on numerous occasions. And so when the world thought that EFEX was FXCM's alter ego, nobody wanted to trade with them. And then the final part about it is NFA revealed EFEX's trading strategies. And it's a pricing mechanism. EFEX priced specifically for each market. Most traders didn't. They used the general quote that was published by the CMA, and then they modified it. EFEX, because they didn't do a lot of other things, and the guy who wrote the algorithms, John Dottami, is the most detailed person you could ever believe. If you look at this brief and you see some of the sites in there from the CFRs, John's been researching 24 hours a day for a year about this. And EFEX had much more sophisticated pricing mechanisms for each market it traded in. And so when that came out, it obviously offended a lot of people because EFEX's pricing was tighter. It closed the spread. So the competitors, EFEX was poaching this large amount of volume from these major players who were many of them NFA members. NFA had permanent seats on NFA boards. So there's a conflict of interest between NFA and EFEX. But in any event, let's back up to the remedies because that's what this case to me is about. So the judge said we had four remedies. One is we could appeal to CFTC. How could we appeal to CFTC? It was a settled case. You can't appeal a settled case. I mean, there's cases all over the place. In opposition, respondents state there's a line of cases that say you can appeal a settled case. But that line of cases isn't applicable. That's for class actions and it's for derivative cases, not for a case like this. And then the judge notes that you actually have to be a party to be able to appeal, so we'd have to intervene. How could we intervene in a settled case? It's not possible. And there was no ability to intervene prior to settlement because the case was filed and settled simultaneously. So effectively on, I think it was February 9th, a complaint was filed and a decision was issued. The court said you didn't make an attempt. You just looked at it and said you can't. It's not going to work and didn't go any further. That's right. How could it work? It doesn't make any sense. I mean, I've been litigating for 35 years. When you have a settled case and you're not a party to it, you can't appeal it. And to go through a... I mean, there's law all over the place. You can't appeal settled cases. You just can't. And then we're not even a party. So that is correct. We didn't make an attempt to appeal, but we looked at it and concluded that we couldn't do it. So they can't... NFA can't cite a case where a non-party appealed a settled case. They cite Grandview, but Grandview is a case where a party that settled or made an offer of settlement then said, you know what, I reject my settlement. I pull it back. And then they appealed to see whether or not they could pull back their settlement. That was a party. It wasn't a non-party intervening and stating, you want to change this case? And then the bigger part about it is, I don't really care about their decision. Reversing the decision isn't what this case is about. It's what they did with it afterwards. If they had a decision with FXCM and their decision found FXCM loses its license, violated these rules, they didn't have to put EFEX all over it. You look at NFA's website, all their decisions. EFEX is the only party that's mentioned in any of their decisions with detail. We did an analysis, and it's somewhere in the record, I don't know where, but we looked at three years of their narratives, decisions. EFEX was targeted. It was specifically targeted. Nobody else was targeted. So... So if they had done their standard decision, which said this is the rule, it was violated, here's the fine, it wouldn't have been a problem. And if their decision hadn't been publicly broadcast via a narrative, which the narrative, all of their sick accounts and the complaint against FXCM, if you read the narrative, it was all about EFEX. What about Citadel 1? Well, Citadel 1... I mean, Citadel 1... I mean, first, Citadel was a party, which EFEX was. So Citadel didn't have to intervene to get standing to do it. And that's, I think, a significant difference. I mean, they have a right to appeal. We weren't... We weren't parties, and ultimately, Citadel, they went to SEC, rather, and SEC said, there aren't any remedies, and Citadel was a lot closer than we are, and then Citadel brought their case back, and this court found that they could proceed forward. We're two steps removed further than what Citadel had, and they got rejected, and they were, besides being a party, they were also subject to jurisdiction of FINRA. We're not subject to NFA jurisdiction. We were a unicorn. We were the only entity trading that fell into this position. We traded Rolling Spot, which this court determined in Zellner was not a futures. We were an ECP. We only traded with the ECP. The CEA exempts ECPs, and we didn't do any other business. So we weren't... NFA didn't have jurisdiction over us. We didn't really care about the decision. We're not trying to reverse the decision. We're trying to get remedies for the damages that we were slandered for, and it wasn't the decision that slandered us. If the decision was their normal decision, it wouldn't have gone there, but the decision targeted effects. And I think that's the difference between Citadel. Citadel was a party. They were subject to jurisdiction. We were not parties. We weren't subject to jurisdiction, and at the end of the day, the relief we wanted, by reversing that decision, it wouldn't have done anything for us, and we suffered severe monetary harm. This is a company that was making substantial, substantial money, and it got shut down overnight as a result of this. Is there any regulatory body that would have expertise and knowledge and be able to review your situation? My client was an unregulated entity, so it doesn't fall under any regulatory body. The CFTC, though, CFTC did simultaneously, and this may relate to it, I don't know, but CFTC, while NFA was investigating FXCM, opened an investigation to EFEX, and they did not press charges against EFEX. They didn't, and in their decision with FXCM, they did not mention EFEX. They referenced it as HFT and HFT Co. So the timing was HFT, and EFEX was HFT Co. So we don't concede that CFTC had jurisdiction over us, but for purposes of this, they did investigate, they found nothing, and let's go further. If NFA found that EFEX engaged, and FXCM engaged in FXCM abuse of trading, they would have had... They would have had a... They would have had an obligation to have reparations. They didn't, because nobody was harmed. They wanted to get rid of this trader, and there weren't any other ones like EFEX. They were it. And there's all sorts of quotes in our complaint referencing articles where NFA talks how they want to get rid of this OTC trading, it's bad, it's this and that. The fact of the matter is, they had studies that showed that EFEX had the best execution of all the providers, yet they wanted to get rid of them, and since, I think, 2010, you've gone from 46 RFEDs down to two, I believe, is the number. 46 what? RFEDs, Registered Futures Exchange Dealers, I believe. Yeah, I have a hard time pronouncing it. Okay. So we were admittedly targeted, we were targeted, and we were damaged. But we didn't have standing to appeal. We just didn't. And now, you go to the other remedies, you've got waiver of rules. So first of all, to waive rules, we'd have to intervene prior to being able to have standing to seek a waiver of rules. As I stated earlier, you can't intervene in a settled proceeding, and there was no opportunity to intervene prior to settlement because it was filed and started simultaneously. And then, what rules would we want to waive? We'd want a waiver so that we could appeal? Appeal doesn't do anything for us. It wasn't the decision that's our issue. It was what they did with it afterwards. You also have, the judge said, CFTC could review on its own. We could petition them to review on its own. I mean, I don't know how tortured an analysis you could have. If somebody's supposed to do something sua sponte, how could it be my remedy to exhaust to go and say, would you do this sua sponte? It makes no sense. Everybody in here is a lawyer, and I think if somebody saw sua sponte, that the court could do something sua sponte, nobody would consider that that was a remedy that they had to exhaust before filing a suit. Is there any other entity in a class by itself like you claim to be? Not that I'm aware of, no. And then the final remedy the court said we could seek to, didn't seek to exhaust was to modify NFA's rules. Now, I would admit that when we had our constitutional claim, a modification of the rules would have made effect to have given us notice of the proceeding and we could have intervened. But at this point, I've got four other state claims, and I'm not pursuing the constitutional claim. I put that in the brief, so I don't think modification of the rules would do anything for us. And as Ziegler-Villabasi has recently come down with, I don't think the constitutional claim would get us monetary relief, which is what we're seeking. Mr. Bacon, at the time of the decision, what was the financial relationship between FX and Forex Capital? EFEX was a liquidity provider, one of numerous liquidity providers for FXCM. It had not made, it had ceased making, I'm confused about the years, it had ceased making any payment for order flow payments either in mid-14 or mid-16. I can't remember the date off the top of my head. Was that initial $2 million startup loan, was that fully repaid at that time? It had been fully repaid within three months. And it wasn't actually a loan, it was credit with a bank. And yeah, that EFEX got, that was done within six months of startup. So look, initially this deal was, John took a job with FXCM to create algorithmic trading. They realized there was a conflict. So I had done the contract between John and FXCM, and then I did the breakup. And this business was created. And so there was intertwining that had to be unwound. But it was unwound, it was unwound quickly. EFEX was fully stand-alone and profitable within months. I mean, I think its first month of trading, it made $2 million in profits. It was that good. What about this claim that the profits were directed back to FXCM? Well, that's the payment for order flow. So originally, and again, this isn't in the record, so I can't say it, but originally when John's contract with FXCM was, he would get, FXCM would get 70% of trading profits, and he'd get 30. So when we broke it up, we did a contract where John would pay X amount of dollars per million dollars of order flow he got. And that's common. The TD Ameritrade people pay for order flow. And in John's case, or EFEX's case, they could pay more because there wasn't a lot of other stuff that was going on with this company. It didn't have a lot of employees. It was really lean. It was basically him and some technologists, meaning guys that ran the computers and high, high, high expenses on computers. I don't want to interrupt you, but you want to save some time for rebuttal? Yes, I would. As I said, if you had another statement, I didn't want to interrupt. No, I would because I suspect that they're going to raise immunity on their opposition. So thank you. Thank you. Mr. Unikowsky. Thank you, Your Honor. Good morning. May it please the Court. My name is Adam Unikowsky, and I'm here on behalf of the defendant, Apeliz National Futures Association, and the individual defendants in this case. The district court correctly concluded that EFEX cannot sue NFA in federal district court based on statements made in connection with a disciplinary proceeding. To the extent EFEX has any remedy in this case, it lies in the CFTC. The judgment of the district court should therefore be affirmed. EFEX's complaint directly challenges both the procedures used and the conclusions reached in a disciplinary adjudication by NFA. EFEX advances a due process claim where it says that NFA used insufficient procedures. It says that it should have gotten notice and an opportunity to participate or some kind of post-talk process. They didn't get any notice, did they? No, that's correct, Your Honor, they didn't. And the allegation made by EFEX is that the adjudication was deficient in that respect. And EFEX further challenges the substance of the conclusions reached by NFA. EFEX alleges that NFA erred in making certain conclusions as part of its... Is there a procedural mechanism by which EFEX could have requested the CFTC to reopen its proceedings once its decision was down and EFEX realized that it had been mentioned as a significant player in the situation? Well, we don't really know because the CFTC was never given the chance to decide that question, but there's at least a possibility that that existed. So the district court outlined several possible ways that EFEX could have gotten relief from the CFTC. So, for instance, EFEX could have tried to file a motion to intervene and there's an older case from the CFTC in which a non-party filed an intervention motion which the CFTC ultimately denied, but it was entertained. And on the facts of that case, the CFTC concluded that there was no protectable interest. After the CFTC had rendered its decision? The NFA had done so. Oh, I see. And that part hadn't appealed. So it's the CFTC that has the intervention. And so you can go to the CFTC and file a motion to intervene. And we simply don't know what would have happened. And that's one of the difficulties of this case because we're debating about these CFTC rules and regulations and CFTC decisions, and CFTC has never had the opportunity to participate. So the elephant in the room in this case is the absence of the CFTC. Yes, Your Honor. So why don't we get the CFTC into the case? Well, I don't think that's necessary. I think that for a number of reasons, this lawsuit simply cannot lie. Either EFEX has a remedy in the CFTC or it has no remedy at all, but EFEX cannot file the suit in federal district court because a federal district court cannot hear a case that relitigates the conclusions that NFA reached. Only the CFTC is charged to do so. So in your view, we could simply say the dismissal of the suit if the court was correct and remained silent on the question of whether there was a remedy in the CFTC? Yes, that would be an alternative basis for affirming the district court. Pretty unsatisfactory to the bench and bar, though, looking for guidance, isn't it? Well, I think that the court can say that the remedy would not have been clearly useless. I don't think the court is in the best position to decide how CFTC would have construed its own rules. But the relevant legal standard for exhaustion doesn't require the court to decide one way or another what the agency would say. The standard has to be that it's not clearly useless. And in this case, as the district court correctly held, it's not clearly useless because there's a number of paths that would have been open to EFEX. Which was the best path of the ones the district court outlined? I think probably the most natural path would have been to file the motion to intervene. There's some authority in the CFTC. There's the Paribas case that we cited that says that is a possible avenue, that the CFTC does have intervention rules where you can become a party if you meet the standard for intervention. And if, in fact, EFEX has a protectable interest in this case, then the CFTC could have granted an intervention motion. And if the CFTC said no, EFEX could have gone to the Court of Appeals and said the CFTC erred, we have a protectable interest, and CFTC is required to protect that. But I think that what cannot be the case is that, as EFEX claims, there's some kind of gap in the statutory coverage where they're not aggrieved enough to take advantage of the CFTC's remedies, but they are aggrieved enough to file this lawsuit. Because you get this anomaly where a party to an NFA disciplinary proceeding only can go to the CFTC where there's no money remedy, where there's a 30-day statute of limitations, where there's a constrained remedy defined by Congress, whereas here a non-party, a mere bystander who simply doesn't like how it was portrayed, can go to federal district court, potentially years after the fact, and seek money damages, and essentially relitigate the conclusions that NFA reached, which is what EFEX is trying to do. I think the Court should consider what a jury trial would look like in this case. EFEX would be arguing to the jury that NFA erred in the conclusions it reached in its disciplinary proceeding. It would be saying that EFEX... excuse me, NFA made certain conclusions about EFEX, and those were wrong. It sounds like you're... Please continue your thought before I ask the question. No, go ahead, Your Honour. I'm sorry. It sounds to me like you're suggesting that maybe EFEX simply has no remedy. Am I right? Yes, I think that's our ultimate position. So I don't think the Court needs to reach that because it's ultimately up to the CFTC whether to provide a remedy in this case. And so EFEX was supposed to ask the CFTC, and we just don't know what the CFTC would have said because EFEX didn't try. Of course, if the CFTC were to say, yeah, there's a remedy, and we were to agree, then this would all be resolved, wouldn't it? Your Honour, regardless of what the CFTC says, I think the more important point is that this suit has to be dismissed. If EFEX has a remedy in the CFTC, then it clearly has to be dismissed. If EFEX doesn't have a remedy in the CFTC, then we think that's the only remedy. Then it just doesn't have a remedy. But I don't think that there's this gap in the statute where it can go to federal district court. And so ultimately, I think that the Court should just affirm the district court. I don't think it's necessary to entertain a request from CFTC. If EFEX wants to go to the CFTC, it can try to do that, and the CFTC will do what it's going to do, but I don't think that this suit can proceed. I'd like to just say a few words about some of the alternative arguments we make in our brief as well. Of course, we agree with the district court's reasoning, and I think that the cleanest way to resolve the case is to affirm for the reasons given by the district court, but we do have some alternative arguments I'd like to just mention quickly. First of all, I think that NFA is absolutely immune. This really falls within the core of NFA's regulatory immunity. EFEX is literally suing NFA based on statements it made in an adjudicatory decision. It's as if they're suing a judge for statements made in a court order or a judicial opinion. That's the core of the activity that's protected by its immunity, and if this suit goes forward, then NFA would really be required to start censoring itself in its future decisions on pain of facing liability if someone doesn't like what it says, and I think that that kind of disincentive is exactly what immunity doctrines are designed to protect against, and EFEX really doesn't have any real response to this immunity point. EFEX merely claims that NFA was acting in bad faith, and that's just not good enough to defeat immunity, whereas in every single case you can say the prosecutor or the judge acted in bad faith, and then immunity would be largely meaningless if you pleaded the right thing. Immunity turns on the duties that are being challenged, and in this case I just think it's quite clear that NFA was engaging in the types of duties that are cloaked by absolute immunity, and I also just don't think that there's a cause of action in this case. I think my colleague conceded that there's no Bivens action here in terms of the federal claim. As for the state law claims, I do think they're preempted. The NFA is a creature of federal law, and I don't think that Congress intended to subject NFA to state law rules governing its really federal disciplinary proceedings. Among other things, I think Congress directed challenges to NFA decisions to the CFTC, not to potentially state courts under state law. Moreover, I think that the substance of what NFA does should be regulated by federal law. It was created literally as an entity, a creature of federal law, subject to the jurisdiction of the CFTC. I don't think Congress intended for state courts and state laws to govern how NFA conducts its affairs and whether the conclusions that it reaches are correct or not. If the panel has no other questions... Apparently not. We'd ask the Court to affirm the judgment. Thank you. Thank you. Mr. Perkins. I've got two minutes and 36 seconds. I didn't finish about payment for order flow, I realize. It wasn't based on profit percentage. The payment for order flow payments were based on per dollar. Per million dollars, it was a $21 payment. It was modified at time, and that was subject to hot negotiations. Now, I just want to state one thing. So NFA is stating that EFEX should have been able or should have gone to CFTC. If their position was granted, then somebody could settle a case, right, and then get their friend to go contest the case as a proxy and file an appeal and run around. It's absurd. It's not designed for that. EFEX is outside. And then when they talk about claims, this was an intentional tort against EFEX. The federal government, there's a Federal Tort Claims Act. You're putting NFA in a position above everything else. If they do something that's wrong, they should be liable for it. And this was intentionally wrong. It wasn't an accident. You look at their history of decisions, like I said, EFEX is the only one. It's the only one with the detail about stuff like that. This was done to harm EFEX. And it's not about, and we're not trying to appeal the decision. He's right. Mr. Bacon, how unique an operation would you say EFEX was? I would say it was the only one doing what it did. So we have no parallel organization to compare it to as far as this area of trading? That's correct. And about immunity, he made the statement that NFA should censor itself. I think everybody should, every organization should have checks and balances on themselves. If you give them absolute immunity to do whatever they want, they could slander anybody they want, do whatever they want, and harm anyone with no fear. There's no checks and balances on them. That's not what this is about. They acted intentionally outside of their delegated authority. They knew they didn't have jurisdiction over EFEX, and they did this to destroy EFEX. There's no doubt that's what they did, and that's why they shouldn't be immune for that. So it doesn't fall within the heartland of immunity. It actually falls outside of it. If you turned around and, during my argument, sanctioned one of these people here because you didn't like that and they were smiling because they thought I made a good point, you're not immune for that. If you sanction me because I'm obnoxious, yeah, you're immune for that. And their position doesn't make sense. They want everything. They want to be able to do whatever they want, whenever they want, and just say, I'm absolutely immune. Nobody has that. You don't have that. Thank you. All right. Thank you, Mr. Bacon. Thanks. The case is taken under advisement, and the court will proceed to the second case.